372 A.2d 1194
COMMONWEALTH of Pennsylvania
v.
Robert J. ROYSTER, Appellant.

Supreme Court of Pennsylvania.

Argued March 30, 1976.

Decided April 28, 1977.

582

Melvin Brookman, Shein & Brookman, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., James J. Wilson, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Robert J. Royster, was tried by a judge sitting with a jury and was adjudged guilty of murder in the first degree for the shooting death of Charlotte Jamison. Postverdict motions were denied and appellant was sentenced to life imprisonment. This appeal followed.

The facts surrounding this appeal are as follows. On October 31, 1973, appellant entered Sonny's Lounge,

Philadelphia, and began to argue with the barmaid, Mildred Cerdan. During this argument the decedent, Charlotte Jamison, joined Mrs. Cerdan in arguing with appellant. Appellant made some violent threats and brandished a revolver during the argument. Appellant then walked toward the door, turned and fired the gun, the bullet fatally striking the decedent, Charlotte Jamison.

Appellant first argues that the court below erred in failing to compel production of the complete police investigative file pursuant to a subpoena duces tecum. We do not agree. Appellant bases his argument on the United States Supreme Court decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which dealt with the suppression of evidence favorable to the defense.

In the instant case, defense counsel subpoenaed Detective Twyman, the chief investigating police officer for this case.[1] The subpoena duces tecum requested the investigative file concerning the Jamison homicide.

At a sidebar conference defense counsel stated "that the defendant is entitled to those statements and [the case cited by defense counsel] implies in the cases behind it that . . . the information will tend to bear on his guilt or punishment . . . " The district attorney responded that he had complied with the mandates of *Brady, supra,* by furnishing to defense counsel all the exculpatory evidence in the district attorney's file.

The United States Supreme Court in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 392 (filed June 24, 1976), in discussing the scope of discovery mandated by *Brady*, stated:

"The Court of Appeals appears to have assumed that the prosecutor has a constitutional obligation to disclose any information that might affect the jury's

1. The record is unclear as to whether Detective Twyman received the subpoena. Since he was in court with the file we need not decide that factual question.

verdict. That statement of a constitutional standard of materiality approaches the 'sporting theory of justice' which the Court expressly rejected in Brady. For a jury's appraisal of a case 'might' be affected by an improper or trivial consideration as well as by evidence giving rise to a legitimate doubt on the issue of guilt. If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice.

"Whether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely does not demand that much. While expressing the opinion that representatives of the State may not 'suppress substantial material evidence,' former Chief Justice Traynor of the California Supreme Court has pointed out that 'they are under no duty to report sua sponte to the defendant all that they learn about the case and about their witnesses.' *In re Imbler,* 60 Cal. 2d 554, 35 Cal.Rptr. 293, 301, 387 P.2d 6, 14 (1963). *And this Court recently noted that there is 'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on the case.' Moore v. Illinois,* 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." (Emphasis supplied.)

Moreover, this Court in *Commonwealth v. Martin,* 465 Pa. 134, 165, 348 A.2d 391, 407 (1975) (a plurality opinion by Mr. Justice Pomeroy joined by former Mr. Chief Justice Jones and Mr. Justice O'Brien), in discussing the duty of the trial court to conduct an *in camera* inspection of the Commonwealth's files, stated:

"In the case at bar the Commonwealth agreed to supply to appellant any evidence of an exculpatory na-

ture. See n. 12 supra. No such material was forthcoming, however, for the prosecution represented to the trial court, as it does in this Court, that in fact it had in its possession no evidence that would tend to exculpate Martin. Martin contends that it should be the court's judgment, not that of the prosecution, which controls in a matter of such importance. The trial court declined to conduct an in camera inspection of the results of the prosecution's investigation in order to make its own independent appraisal of the evidence. We agree that it had no obligation so to do. As the Court of Appeals for the Fourth Circuit has put it, the rule of Brady 'does not make it incumbent upon the trial judge to rummage through the file on behalf of the defendant.' " (Citations omitted.)

In the instant case, appellant sought complete disclosure of a police investigative file. We are of the opinion that neither *Brady* nor Pa.R.Crim.P. 310 relating to pretrial discovery required such disclosure.

■ Appellant next argues that the court below erred in permitting the introduction into evidence of his gun when it could not be established that the weapon was involved in the instant homicide. We do not agree.

The facts surrounding the above issue are: On November 14, 1973, two weeks after the shooting, at appellant's preliminary hearing defense counsel promised to deliver the questioned weapon to the district attorney. Although the offer to surrender the weapon was made during a discussion of the amount of bail, the record does not indicate any stipulation or limitation upon the Commonwealth's subsequent use of the revolver. The Commonwealth performed ballistics tests but because of the failure to find the bullets that actually killed Jamison, no comparison could be made with appellant's weapon.

In *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974), in discussing the admissibility and relevancy of a

pen knife found on the defendant's person, but not conclusively shown to be the weapon used in the slaying, this court stated:

" . . . 'The fact that the accused had a weapon or implement suitable to the commission of the crime charged, such as a knife . . . is always a proper ingredient of the case for the prosecution.' 1 Wharton's Criminal Evidence § 157 at 289–90 (13th ed. C. Torcia 1972).

"This relevant evidence clearly was admissible. As this Court recently held in *Commonwealth v. Ford*, 451 Pa. 81, 84, 301 A.2d 856, 857 (1973) : '[P]ositive testimony that the knife in question was actually the murder weapon is not required prior to introduction into evidence. . . . If a proper foundation for the admission of the evidence has been laid, as here, then admission into evidence is permissible. . . . The fact that the knife could not be positively identified affects the weight of such evidence, but not its admissibility. . . .' "

See also *Commonwealth v. Bederka*, 459 Pa. 653, 331 A. 2d 181 (1975) (dealing with the admission into evidence of a shotgun not proven to be the weapon used in the homicide).

On direct examination Detective Twyman identified the weapon as appellant's and the one surrendered to Twyman by defense counsel. The Commonwealth further established through the testimony of the barmaideyewitness to the shooting that the weapon was of the type that appellant had on the night of the fatal shooting. Detective Twyman, on cross-examination by defense counsel, testified that the Commonwealth could not establish that this gun was the murder weapon.

We are of the opinion that the court below did not err in admitting into evidence appellant's revolver, since the inability of the Commonwealth to establish this weapon's

use in the homicide goes to the weight, not the admissibility, of the evidence.

■ Appellant next argues that the court below did not charge the jury that the Commonwealth had the burden of proof beyond a reasonable doubt of every element of the crime. We do not agree.

Our review of the charge reveals the following excerpts:

"In reaching a verdict, the jury must consider all of the evidence to determine the guilt or the innocence of the defendant, *since the Commonwealth has the burden throughout the trial to establish the guilt of the defendant beyond a reasonable doubt.* The jury will weigh the evidence in the light of that burden in reaching a verdict.

"Every man comes to the bar of the Court presumed to be innocent of the charges against him and *the Commonwealth has the burden of proving that the defendant is guilty of the crime as charged beyond a reasonable doubt. The defendant is under no obligation to establish his innocence.*"

\*      \*      \*      \*      \*      \*      \*      \*

" . . . The defendant is presumed to be innocent, like every defendant in a criminal court and the burden is on the Commonwealth to establish his guilt and *every essential element of the crime charged against him beyond a reasonable doubt.*" (Emphasis supplied.)

The court then continued to charge as to elements of the degrees of murder and voluntary and involuntary manslaughter. Our review does not reveal that the court below omitted from its charge the "beyond a reasonable doubt" standard of proof.

■ Appellant next argues that the court below erred by not charging the jury that two of the Common-

wealth's witnesses allegedly violated the court's sequestration order and further that one of the two witnesses committed perjury. We do not agree.

At the beginning of appellant's trial, the court below imposed a sequestration order, part of which prohibited witnesses from discussing the case or their testimony with anyone. During the first day of the trial, appellant's counsel informed the court that he had information that Detective Twyman, the chief investigating officer on this case, and Mildred Cerdan, the eyewitness to the shooting, were seen talking outside the courtroom. Immediately an *in camera* hearing was held during which both Detective Twyman and Mrs. Cerdan testified that they did in fact talk during the luncheon recess but that the conversation was centered around generalities and did not concern either the case or the other's testimony. The trial judge was satisfied with this explanation and accordingly found no violation of his sequestration order. Appellant now contends that the court below should have charged the jury that a violation did occur and that in fact perjury was committed by one of the witnesses.[2]

We do not reach the merits of appellant's claim because of the failure to request such a charge or to specifically object during the court's charge to its omission. Therefore, the issue has not been preserved for appellate review. See *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975).

Judgment of sentence affirmed.

EAGEN, C. J., concurs in the result.

NIX, J., files a concurring opinion.

2. Detective Twyman and Mrs. Cerdan were both unclear as to whether there were two conversations or one conversation fragmented into two parts. This confusion as to the number of conversations is what appellant contends is perjury.

ROBERTS, J., files a dissenting opinion in which MANDERINO, J., joins.

MANDERINO, J., files a dissenting opinion.

NIX, Justice, concurring.

I accept the result reached by the plurality opinion of Mr. Justice O'BRIEN and reject the position of the dissent because I do not believe there was any basis for believing that the requested materials contained exculpatory evidence.

ROBERTS, Justice, dissenting.

I dissent. During the trial of this case, appellant sought disclosure of certain materials in the possession of the prosecution because he believed they contained exculpatory evidence. The trial judge accepted the Commonwealth's assertion that the materials contained no such evidence and on that basis denied appellant's request. A trial judge may not rely solely on such a representation. If there is any basis for believing that the requested material contains exculpatory evidence, a trial judge should examine those materials in camera before ruling on the request.

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97 (1967), the Supreme Court held that:

"suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

Under *Brady*, the prosecution has a duty to produce evidence which is materially favorable to the accused. E. g., *Williams v. Dutton*, 400 F.2d 797 (5th Cir. 1968); see *Commonwealth v. Powell*, 449 Pa. 126, 295 A.2d 295 (1972); *Lewis v. Court of Common Pleas*, 436 Pa. 296, 260 A.2d 184 (1969).

Blanket acceptance by a trial court of the prosecution's assertion that it possesses no such evidence does not adequately protect the rights of the accused. As Judge Frankel has observed:

> "[t]he unfortunate defect in this course is that it leaves with one (the more powerful) of the adversaries a critical period of unilateral control that must . . . exact an unacceptable toll of unfair convictions."

*United States v. Gleason,* 265 F.Supp. 880, 885 (S.D.N. Y.1967). A defendant's constitutional right to the production of exculpatory evidence "cannot depend upon the benevolence of the prosecutor." *Williams v. Dutton,* 400 F.2d at 800 (footnote omitted). Accord, *United States v. Deutsch,* 373 F.Supp. 289 (S.D.N.Y.1974).

This Court has recently been presented with a case in which the Commonwealth failed to disclose exculpatory evidence. In *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977), the Commonwealth sought to use a voiceprint comparison to connect appellant with a murder. The district attorney, claiming to have no sample of appellant's voice, sought a court order compelling appellant to provide a voice exemplar for comparison with a tape recording of a telephone call made to the state police. The court ordered the accused to make an exemplar, using the same words found on the tape of the telephone call. Throughout this and all subsequent proceedings, the Commonwealth failed to disclose the existence of a recording of appellant's voice made when he was first questioned by the state police. Only at trial did the existence of this "secret tape" become known when the Commonwealth's expert witness indicated that he had examined this tape. This witness further testified that a comparison of the "secret tape" with the incriminating telephone call was inconclusive. The Commonwealth's failure to inform the defense of the tape's existence deprived him of a fair trial. Id. (concurring opinion). As the

*Topa* case illustrates, the Commonwealth can make mistakes or become overzealous in its efforts to secure a conviction.

The majority dismisses appellant's claim with a quotation from *United States v. Agurs*, 427 U.S. 97, 108–09, 96 S.Ct. 2392, 2399–400, 49 L.Ed.2d 342 (1976). The majority has completely misunderstood the issue in *Agurs*. The Court's purpose was to establish a standard for evaluating *Brady* claims after a defendant has been convicted. The specific holding in *Agurs* is that in the absence of a focused request for exculpatory evidence by the defense, a high standard of materiality must be met before the prosecution's failure to disclose evidence violates due process and requires a new trial.[1] *Agurs* simply does not stand for the proposition that the determination whether the prosecution must disclose evidence to the defense under *Brady* is left to the unfettered discretion of the prosecutor. Indeed, the Court noted that ". . . if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge." 427 U.S. at 106, 96 S.Ct. at 2399.

Appellant here sought materials he believed contained exculpatory evidence.[2] His request was necessarily

1. "[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." 427 U.S. at 112, 96 S.Ct. at 2401–02. The Court also discussed the standards of materiality which apply when (1) the prosecution uses or condones the use of perjury, id. at 103, 96 S.Ct. at 2397, and (2) the prosecution fails to disclose exculpatory evidence after a focused request by the defense, id. at 105, 96 S.Ct. at 2398. See generally Note, The Prosecutor's Constitutional Duty to Disclose Exculpatory Evidence, 14 Am.Crim.L.Rev. 319 (1976).

2. Appellant sought disclosure of all "records, memos, . . . statements and reports of investigation, [and] photographs pertaining to the police department's investigation and the death of one Charlotte Jamison . . . and all reports of the incident which occurred at Sonny's Bar," because he believed they contained exculpatory evidence. Appellant was not seeking nor

broad because he could not know the contents of the requested material. When faced with such a request for production of exculpatory evidence, a trial judge has the duty to determine whether counsel can make the request with more specificity. The mere fact that the request is framed in general terms is no ground for its summary denial. See *Jencks v. United States*, 353 U.S. 657, 668 n.12, 77 S.Ct. 1007, 1013 n.12, 1 L.Ed.2d 1103 (1957).

In my view, if there is a basis for believing that the requested material contains exculpatory matter, the trial judge should review such material in camera. *State v. Brown*, 98 Idaho 209, 560 P.2d 880 (1977); see *United States v. Agurs*, supra; *Flanagan v. Henderson*, 496 F.2d 1274 (5th Cir. 1974); *United States v. Barket*, 64 F.R.D. 573 (W.D.Mo.1974). But see e. g., *United States v. Cobb*, 271 F.Supp. 159 (S.D.N.Y.1967). In camera examination may reveal that the requested material contains neutral or damaging evidence, in which case it need not be produced. Or it may disclose the existence of exculpatory evidence which must be given the accused. The examination itself enhances the fairness of the trial proceedings.[3]

could he have obtained these materials during pre-trial discovery of evidence held by the Commonwealth. There has been substantial debate concerning the propriety and scope of pre-trial discovery in criminal cases. See Y. Kamisar, W. LaFave, and J. Israel, Modern Criminal Procedure 1207–16 (4th ed. 1974). However, here appellant sought only that evidence which the prosecution had a constitutional duty to produce, not the entire investigative file, as the majority asserts.

3. Defense counsel is certainly better able to evaluate whether the requested evidence is exculpatory. See *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); *Commonwealth v. Grayson*, 466 Pa. 427, 353 A.2d 428 (1976). However, as the majority correctly observes, *Brady*, does not require that the prosecution make a complete accounting of its investigation to the defense. See *United States v. Agurs*, supra; *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). See generally Pa.R.Crim.P. 310. Thus, the only feasible check upon the prosecutor's discretion is in camera review by the trial court after the defense makes a focused *Brady* request.

The trial court's summary response to appellant's request here was inadequate. It left to the Commonwealth's unfettered discretion the determination whether it possessed exculpatory evidence. I would vacate the judgment of sentence and remand the case to the trial court for in camera inspection of the requested material. If the court's inspection revealed material evidence a new trial should be ordered.[4] If, however, it revealed no such evidence, the judgment of sentence should be reinstated. See *Flanagan v. Henderson,* supra. *State v. Brown,* supra. I therefore dissent from the majority's refusal to grant such relief.

MANDERINO, J., joins in this dissenting opinion.

MANDERINO, Justice, dissenting.

I join in the dissenting opinion of Mr. Justice Roberts. I agree that only the trial judge and not the prosecution can make a final determination as to what materials the defense is entitled to see, I should like to add, however, that if the prosecution's file contains any statements of prosecution witnesses, defense counsel must be allowed to see such statements. As we said in *Commonwealth v. Grayson,* 466 Pa. 427, 429, 353 A.2d 428, 429 (1976) :

"whether the statements of the prosecution's witnesses would have been helpful to the defense is not a question to be determined by the prosecution or by the trial court. They would not be reading the statements with the eyes of a trial advocate engaged in defending a client. Matters contained in a witness's statement may appear innocuous to some, but have great significance to counsel viewing the statements from the perspective of an advocate for the accused about to cross-examine a witness."

4. When the defense has requested specific items, the prosecution's failure to disclose requires reversal if the evidence "might have affected the outcome of the trial." *United States v. Agurs,* 427 U.S. at 104, 96 S.Ct. at 2398.