425 A.2d 387

COMMONWEALTH of Pennsylvania, Appellee,

v.

John Anthony COCCIOLETTI, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Donald Anthony GARRITY, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 2, 1980.

Decided Feb. 4, 1981.

104

106

Leonard L. Martino, Pittsburgh, for appellant in No. 106.

Irving M. Green, New Kensington, for appellant in No. 107.

Patrick H. Mahady, Asst. Dist. Atty., Greensburg, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

LARSEN, Justice.

Appellants John Coccioletti and Donald Garrity were charged with criminal homicide for the shooting death of one Dale Clawson. Appellants were found guilty of murder of the third degree after a joint trial before a jury. Appellants' post-trial motions were denied, and a sentence of three to ten years imprisonment was entered on the verdict.

This direct appeal involves issues of whether the evidence is sufficient to sustain their convictions for murder of the third degree; whether certain firearms and ammunition were properly admitted; and whether appellants' Sixth Amendment rights were violated at their joint trial.

Appellants initially contend that the evidence was insufficient to sustain a conviction, particularly that the evidence was insufficient to prove accomplice liability. To evaluate the sufficiency of evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Stockard*, 489 Pa. 209, 413 A.2d 1088 (1980). Entirely circumstantial evidence is sufficient to sustain a conviction. *Commonwealth v. Prado*, 481 Pa. 485, 393 A.2d 8 (1978). The evidence, read in a light most favorable to the Commonwealth, is as follows:

Appellants Coccioletti and Garrity were drinking heavily on the night in question. A short time after 1:45 a.m. on March 25, 1979, a friend drove them to Coccioletti's cabin located on County Line Road in a rural area of Westmoreland County. Two passing motorists observed appellants at the right side of the road in front of Coccioletti's cabin shortly before 2:15 a.m.

At approximately 2:15 a.m. the victim, Dale Clawson was driving a pick-up truck on County Line Road. A passenger in the victim's truck testified that he observed two persons,

neither of whom he could identify, standing on the right side of the road in front of Coccioletti's cabin. A split second after passing them, the passenger heard a gunshot, the victim slumped forward, and the truck veered off the road and crashed. The passenger then observed the fatal wound which had been caused by a bullet passing through the rear window of the truck and through the victim's skull.

One of the motorists who saw appellants at the scene a few minutes before the incident heard the fatal shot and observed the victim's truck off the road.

Shortly after the incident, a friend who was unaware that a killing had occurred met appellants and drove them to a restaurant. As they passed the victim's wrecked truck Coccioletti expressed a sense of responsibility by stating, "I feel kind of responsible for it because I threw an M-80 [firecracker] at the truck."

After appellants and their friend arrived at the restaurant, they received a telephone call from another friend asking if appellants were involved in any incident. Garrity denied involvement, and the group left the restaurant. But while driving back to Coccioletti's cabin, appellants began to concoct a story to explain the whereabouts of certain guns in their possession. Garrity asked Coccioletti, "What are we going to do with the guns?" Coccioletti responded, "We could say they were in Jeanette [Jeanette, Pa.]." Prior to arriving at the cabin, Coccioletti emptied bullets from a .44 caliber revolver he was carrying. Coccioletti also hid the revolver and a .45 caliber automatic pistol that Garrity was carrying under some leaves in the woods.

Appellants finally arrived at Coccioletti's cabin where another friend asked them what they had been doing. Coccioletti replied that they had been shooting across the roadway, but the only possible way they could have hit anyone was by a ricochet.

Although the fatal bullet has not been recovered, two spent .45 caliber cartridges were found by the roadside in front of Coccioletti's cabin. These spent cartridges had been fired from the .45 caliber automatic pistol which was in

Garrity's possession after the homicide. Broken glass was found on the highway in front of Coccioletti's cabin where the bullet shattered the window of the truck. Dr. Manuel Pelaez, a forensic pathologist testified that a bullet was the cause of death.[1] He also testified that the path of the bullet was through the rear window and through the victim's skull, and that, based on its high velocity, the bullet could not have been a ricochet.

█ Since the evidence and inferences that can be drawn therefrom clearly establish that one of the appellants fatally shot the victim in the skull, there is sufficient evidence to sustain the conviction as to that appellant.

█ Appellants' contention that the evidence is insufficient to sustain a finding of accomplice liability is also without merit. The least degree of concert or collusion is sufficient to sustain a finding of responsibility as an accomplice. *Commonwealth v. Mobley*, 467 Pa. 460, 359 A.2d 367 (1976). In this case the record shows that the appellants were together prior to and during the homicide. Coccioletti stated that both appellants had been shooting across the roadway. Furthermore, appellants acted in concert to conceal their firearms and fabricate statements concerning the whereabouts of their firearms. It is unnecessary for the Commonwealth to show which appellant actually fired the fatal shot, because whichever appellant was not the actor would be equally responsible as an accomplice. *Commonwealth v. Bradley*, 481 Pa. 223, 392 A.2d 688 (1978), *cert. denied*, 440 U.S. 938, 99 S.Ct. 1286, 59 L.Ed.2d 498 (1979); 18 Pa.C.S.A. § 306. We conclude that the evidence was sufficient to sustain a conviction of murder of the third degree as to both appellants.

Appellants next contend that the admission into evidence of certain handguns and ammunition was reversible error.

1. Appellants' claim that the evidence is insufficient to prove causation beyond a reasonable doubt. The forensic pathologist testified that, with a reasonable degree of medical certainty, the bullet wound caused the death of the victim. A reasonable degree of medical certainty is sufficient to support a jury verdict of guilty. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975), and appellants' claim is without merit.

The Commonwealth seized nine firearms and a quantity of ammunition from the cabin owned by Coccioletti the same day of the homicide. Two spent bullet casings were also found on the side of the road at the scene of the homicide. Three handguns, ammunition, and the two casings were admitted into evidence at trial. Whether any or all of this evidence could properly be admitted depends on its relevance. *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972).

A weapon taken from the defendant's possession may be admissible even where there is no proof that it is the murder weapon. *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). In *Commonwealth v. Bederka*, 459 Pa. 653, 331 A.2d 181 (1975), we explained that seized weapons are relevant because they tend to prove that the defendant possessed the necessary means to commit the murder. The lack of proof that the weapon is the murder weapon goes to the weight of the evidence but not its admissibility. *Commonwealth v. Royster*, 472 Pa. 581, 372 A.2d 1194 (1977). Since the forensic pathologist testified that the fatal wound was made by a bullet, the pathologist's testimony provides the foundation for properly admitting the three handguns, whether or not it has been proven that any of them are the murder weapon. Furthermore, two of the handguns were identified by appellants' friend as being the same two weapons that appellants attempted to conceal after the homicide.

The two spent cartridges were found on the scene of the homicide. A ballistics expert testified that the cartridges had been fired from the .45 caliber automatic pistol which was registered to Coccioletti and in Garrity's possession after the homicide. The spent cartridges tend to prove that the appellants had the operative means of inflicting the fatal wound and were held to be properly admitted. Furthermore, the cartridges are admissible even in the absence of evidence linking them to appellants: in *Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747 (1977) a knife sheath found in the immediate area of a fatal stabbing was properly admitted despite a failure to show that the sheath belonged to the accused.

■ The admission of demonstrative evidence is within the discretion of the trial court and absent an abuse of discretion will not be overturned. *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980). We do not find any abuse of discretion and we conclude that the handguns and ammunition were both relevant and properly admitted.

Appellants finally claim that their Sixth Amendment confrontation rights were violated when the trial court admitted, over their objections, their out-of-court statements which implicated each other. Appellants' friend was permitted to testify that Garrity asked Coccioletti, "What are we going to do with the guns"? to which Coccioletti responded, "We could say they were in Jeanette [Jeanette, Pa.]." Another friend was permitted to testify that Coccioletti admitted that appellants had been shooting across the roadway, but the only possible way they could have hit anyone was by a ricochet. These statements clearly implicated the non-declarant appellant. Neither appellant testified so neither was subject to cross examination or confrontation. Therefore, appellants conclude, their Sixth Amendment rights to confront adverse witnesses (i. e. each other) have been violated.

Appellants rely on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), where the U. S. Supreme Court held that in a joint trial, the out-of-court confession of a co-defendant who fails of take the stand is inadmissible because it violates the defendant's Sixth Amendment right to confront adverse witnesses. However, in *Bruton*, the co-defendant's out of court confession was inadmissible because it violated the hearsay rule of evidence. *Id.* at 128 n.3, 88 S.Ct. at 1623 n.3. The Court expressly reserved judgment about cases where the co-defendant's confession *would* be admissible under some exception to the hearsay rule. *Id.* at 128 n.3, 88 S.Ct. at 1623 n.3.

■ A well-established exception to the hearsay rule permits the out-of-court declarations of one co-conspirator to be admitted against another co-conspirator provided that the declarations were made during the conspiracy and in furtherance of the common design. McCormick, Law of Evidence, p. 645, § 267 (2d ed. 1972). In *Dutton v. Evans*, 400

U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), a criminal case originating in the State of Georgia, the U. S. Supreme Court held that an out of court declaration by a co-conspirator which implicated the defendant was admissible and the defendant's Sixth Amendment rights were not violated even though the co-conspirator did not take the stand. Unlike the *Bruton* case where no hearsay exception existed, the declarations were admitted in a Georgia Court under the co-conspirator exception to the hearsay rule.

In *Dutton*, the U. S. Supreme Court refused to equate the hearsay rule with the Sixth Amendment confrontation clause, i. e., even though a statement may come within an exception to the hearsay rule, it must still be tested against the confrontation clause. The Court held that the confrontation clause was not violated whenever the declarations had strong "indicia of reliability". *Id.* at 89, 91 S.Ct. at 220. These "indicia of reliability" satisfied the Sixth Amendment confrontation clause policy of "practical concern for the accuracy of the truth-determining process in criminal trials . . ." *Id.* at 89, 91 S.Ct. at 220.

 *Dutton* governs appellants' case because (1) the appellants' out-of-court declarations implicating each have strong indicia of reliability" and (2) the appellants' declarations were admissible under Pennsylvania exceptions to the hearsay rule.

First, the "indicia of reliability" present in *Dutton* are also present in this case. Appellants' declarations do not expressly admit the homicide, and as such, would not be given undue weight by the jury. Appellants were together throughout the incident and were fully aware of each other's roles, so the declarations are clearly based on personal knowledge. Because the appellants made the declarations in each other's presence, there would be no apparent reason to lie. The declarations, made soon after the homicide, have strong indicia of spontaneity. Finally, the declarations are against the appellants' own penal interest. The reliability of appellant's declarations satisfy the confrontation clause. *See Commonwealth v. Ransom*, 446 Pa. 457, 288 A.2d 762 (1973).

Second, in Pennsylvania, the out-of-court declarations of one co-conspirator can be admitted against another co-conspirator provided that the declarations were made during the conspiracy and in furtherance of the common design. *Commonwealth v. Evans*, 489 Pa. 85, 413 A.2d 1025 (1980). This Court has extended the co-conspirator exception to admit declarations by "co-participants" in a crime even where conspiracy has not been charged or proven. *Commonwealth v. Stoltzfus, supra* at n.1; *Commonwealth v. Weitkamp*, 255 Pa.Super. 305, 386 A.2d 1014 (1978), *petition for allowance of appeal denied.* ("joint criminal enterprise" sufficient even if conspiracy not charged). Appellants were co-participants in the crime: this has been established in the accomplice liability discussion. The declarations were made in the course of concealing evidence and in furtherance of common design of evading capture. Although the co-conspirator exception to the hearsay rule has not been applied when the declarations are made after arrest and termination of the conspiracy, *Commonwealth v. Ellsworth*, 409 Pa. 505, 187 A.2d 640 (1963), the appellant's declarations in this case were made prior to their arrest while the conspiracy was still in progress. We conclude that appellants' declarations fall within the Pennsylvania co-conspirator exception to the hearsay rule, and the *Dutton* case is applicable. *See: Commonwealth v. Potter*, 449 Pa. 153, 295 A.2d 311 (1972).

 Furthermore, there is an additional basis for admitting the hearsay testimony. Appellants' inculpatory declarations were made in each other's presence, and if incorrect, would naturally have been denied. Pennsylvania follows a traditional exception to the hearsay rule which admits such declarations as implied admissions by the silent and acquiescing accused. *Commonwealth v. Vallone*, 347 Pa. 419, 32 A.2d 889 (1943). *Vallone* was overruled in part by *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A.2d 904 (1967) which excluded implied admissions because of the Fifth Amendment protection against self-incriminating statements. However, the scope of *Dravecz* was limited to implied admissions made while in custody or in the presence of police officers. In *Commonwealth v. Schmidt*, 452 Pa.

185, 299 A.2d 254 (1973), this Court held that implied admissions made while free from custody, with no police present, are still admissible. The appellants in this case were not in custody and no police were present when the inculpatory statements were made. Therefore, we conclude appellants' declarations fall within the implied admissions exception to the hearsay rule.

Both requirements of the *Dutton* case are satisfied in appellants' case and thus their Sixth Amendment rights have not been violated.

The judgment of sentence is affirmed.

ROBERTS, J., concurred in the result.

FLAHERTY, J., filed a dissenting opinion.

FLAHERTY, Justice, dissenting.

I dissent on the ground that error was committed by admission into evidence of one of the handguns seized during a search of appellant's residence. Under limited circumstances a weapon taken from a defendant's possession is admissible notwithstanding an absence of proof that it was employed in the commission of a homicide. *Commonwealth v. Royster*, 472 Pa. 581, 372 A.2d 1194 (1977). *Commonwealth v. Bederka*, 459 Pa. 653, 331 A.2d 181 (1975). *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). *Commonwealth v. Ford*, 451 Pa. 81, 301 A.2d 856 (1973). The following rationale for the admissibility of such a weapon was stated in *Commonwealth v. Bederka*, 459 Pa. at 659, 331 A.2d at 183: "The possession by appellant of weapons similar to the ones used in the actual murder was certainly relevant to establish that appellant *possessed the necessary means* to commit the murder." (Emphasis added). The opinion of Mr. Justice Larsen, while noting that only two of the three handguns admitted into evidence were identified by testimony as being the same two weapons that appellants attempted to conceal after the homicide, applies the foregoing principle of admissibility with respect to all three weapons. The third handgun, however, bore no connection with the homicide, other than that it was seized from appellant's

residence during the course of investigation. Nor was admission into evidence of the third handgun necessary to prove that appellant *possessed the necessary means* to have committed the crime, since the other two handguns were certainly sufficient for that purpose. Handguns exist solely as instruments of destruction, and the introduction into evidence of a handgun, without a basis for its relevance, is inflammatory and prejudicial, due to the appearance of destructive character the weapon imputes to its possessor.

The court below deemed that if admission of the third weapon into evidence were error, such error could not be asserted as prejudicial because defense counsel, upon subsequent cross-examination of police officers, intentionally and repeatedly elicited the fact that not only were three weapons seized but rather a total of nine weapons were discovered in appellant's residence. Testimony established that these other weapons included a shotgun and rifles which could be used for hunting. Counsel did object to admission of the three handguns, however, and one may only speculate as to counsel's motive for bringing the other guns to the attention of the jury. Nevertheless, it cannot be assumed that cross-examination would have pursued the same course if any of the three handguns had previously been excluded from evidence. Based upon the improper admission into evidence of the third handgun, I would grant a new trial.