COMMONWEALTH of Pennsylvania, Appellee,

v.

**Dwight MARSHALL, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 2, 1999.
Filed Dec. 15, 1999.

Norris E. Gelman, Public Defender, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Com., appellee.

Before POPOVICH and ORIE MELVIN, JJ., and CIRILLO, President Judge Emeritus.

POPOVICH, J.:

¶ 1 Appellant appeals from the judgment of sentence entered on April 14, 1998, in the Court of Common Pleas of Philadelphia County. Appellant was convicted of first degree murder, criminal conspiracy and possession of an instrument of crime. Appellant was sentenced to life in prison. Appellant was also sentenced to 20 to 40 years imprisonment for conspiracy to commit murder, concurrent to his life sentence. In addition, appellant was sentenced to 5 to 10 years imprisonment for possession of an instrument of crime, concurrent to his life sentence and consecutive

to his sentence for conspiracy. Upon review, we reverse and remand for a new trial.

¶ 2 Herein, appellant asks the following:

1. DID REVERSIBLE ERROR OCCUR WHEN THE TRIAL COURT ALLOWED THE PROSECUTOR TO INTRODUCE A 9 MILLIMETER [HANDGUN] SAID BY OFFICER LYLES TO HAVE BEEN IN APPELLANT'S POSSESSION EIGHTY (80) DAYS PRIOR TO THIS HOMICIDE AND WHICH HAD BEEN IN CONSTANT POLICE CUSTODY?

2. SHOULD A MISTRIAL HAVE BEEN GRANTED WHEN THE PROSECUTOR DELIBERATELY ELICITED FROM COMMONWEALTH EYEWITNESS YOLANDA HALE THAT HER HOUSE HAD BEEN FIREBOMBED WITHOUT ANY EVIDENCE THAT APPELLANT, OR ANY DEFENDANT, HAD ANYTHING TO DO WITH THE FIREBOMBING?

3. WAS TRIAL COUNSEL INEFFECTIVE BECAUSE HE FAILED TO OBJECT TO THE PURPORTED SUMMARY OF THE BEYOND A REASONABLE DOUBT STANDARD OF PROOF WHICH WAS NOWHERE NEAR AN ACCURATE SUMMARY OF THE CONSTITUTIONAL CONCEPT?

4. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO OBJECT TO THE COURT'S UNBALANCED CHARGE ON CIRCUMSTANTIAL EVIDENCE THAT NEGATED HIS DEFENSE OF GOOD CHARACTER?

Appellant's brief, at 7. Given our resolution of appellant's first argument, we need not address the remaining issues. *Common-*

*wealth v. Brennan*, 696 A.2d 1201, 1205 n. 5 (Pa.Super.1997).

¶ 3 The record reveals the following: On December 29, 1996, Derrick "Bay" Ruffin and several friends, including Larry "Omar" Langley, were watching a football game at Moe and Curley's Lounge on the 4900 block of Wayne Avenue in Philadelphia. (N.T. 2/25/98, at 451). After the game ended, Mr. Langley left the bar and was stopped by co-defendant Riyad Johnson, who told him that he "[didn't] belong over this side of Wayne Avenue." (N.T. 2/25/98, at 452). Following this encounter between Mr. Langley and co-defendant Johnson, Mr. Langley left the scene and returned with a gun. (N.T. 2/25/98, at 452).

¶ 4 A fight between co-defendant Johnson and Mr. Langley ensued. After two individuals broke up the fight between co-defendant Johnson and Mr. Langley, Mr. Langley once again left the scene. (N.T. 2/25/98, at 452–454). Moments later, appellant and co-defendants Johnson and Prentice Brown returned to the parking lot next to Moe and Curley's Lounge, where Mr. Ruffin was shot and killed. (N.T. 2/20/98, at 73–74, 152–153; N.T. 2/25/98, at 327–330, 379–380).

¶ 5 Mack Wynn and Mark Dennis testified that they observed the fight between co-defendant Johnson and Mr. Langley, and witnessed co-defendant Johnson and appellant shoot several times into the parking lot next to Moe and Curley's. Mr. Wynn and Mr. Dennis stated that they knew both appellant and co-defendant Johnson from the neighborhood. (N.T. 2/20/98, at 72–84, N.T. 2/25/98, at 327–331). Yolanda Hale testified that she saw appellant and co-defendant Johnson shoot Mr. Ruffin. (N.T. 2/20/98, 149–157, 161–169). Aubrey Langley testified that he saw co-defendants Johnson and Brown shoot Mr. Ruffin. (N.T. 2/25/98, at 378–380).

¶ 6 Jerome Stevenson, a fact witness called by appellant, testified that he saw Mr. Langley and Mr. Ruffin leave Moe and Curley's Lounge on the night that Mr. Ruffin was murdered. Mr. Stevenson further testified that he saw Mr. Langley on the street and that Mr. Langley was armed. (N.T. 2/27/98, at 774). Shortly after Mr. Stevenson left the street, he heard approximately eight gunshots. Although Mr. Stevenson did not see who fired the shots, he testified that he did not see appellant or any of his co-defendants among the eighty people he claimed to have seen on the street that evening. (N.T. 2/27/98, 769–770, 774–776). Mr. Stevenson also testified that he had no trouble seeing events near the crime scene because of the bright street lights. (N.T. 2/27/98, at 790–791).

¶ 7 Mr. Langley ran toward the sound of the gunshots and saw Mr. Ruffin fall to the ground. Mr. Langley fired twice in the direction of the previous shots and asked Mr. Ruffin what happened. (N.T. 2/25/98, 451–457). Mr. Ruffin answered Mr. Langley by stating the name of Riyad Johnson. (N.T. 2/25/98, 457–458). Mr. Ruffin received six gunshot wounds and was pronounced dead on December 30, 1996. (N.T. 2/20/98, at 49–52, 54–59).

¶ 8 We now address appellant's first argument that it was reversible error for the lower court to permit the introduction of a nine millimeter handgun that the police said was in appellant's possession eighty days prior to the homicide of Mr. Ruffin. Mr. Ruffin died from gunshots fired from a nine millimeter handgun. However, appellant correctly notes that his handgun was confiscated on October 9, 1996, and remained in police custody on the night of Mr. Ruffin's death. Appellant timely objected to the introduction of this evidence which the lower court overruled. After the admission of the gun, the lower court charged the jury, in relevant part, that,

> [Y]ou've just heard certain testimony from this witness which might tend to show that [appellant] ... was guilty of an offense or certain improper conduct for which he is not presently on trial.

Now this evidence is before you for a very limited purpose and that's because it may be relevant to the circumstances involved in this case. This evidence must not be considered by you in any way other than the purpose I've just stated. You must not regard this evidence as showing that [appellant] ... is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

If you find [appellant] or any defendant guilty, it must be because you're convinced by the evidence that [appellant] committed the crime charged and not because you believe he may have committed some other offense or some other improper conduct, and the testimony concerning the fact that this witness did, indeed, see this handgun is appropriate for the purpose I stated.

(N.T. 2/25/99, at 294–295).

¶ 9 The admissibility of evidence is a matter addressed solely to the discretion of the trial court and may be reversed only upon a showing that the court abused its discretion. *Commonwealth v. Wayne*, 553 Pa. 614, 637, 720 A.2d 456, 467 (1998). "A weapon shown to have been in a defendant's possession may properly be admitted into evidence, even though it cannot positively be identified as the weapon used in the commission of a particular crime, if it tends to prove that the defendant had a weapon similar to the one used in the perpetration of the crime." *Commonwealth v. Williams*, 537 Pa. 1, 20, 640 A.2d 1251, 1260 (1994). "Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence." *Id.* (citing *Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A.2d 387 (1981)). Furthermore, we recognize the presumption in our law that the jury obeys the trial court's instructions. *Commonwealth v. Baez*, 554 Pa. 66, 88, 720 A.2d 711, 721 (1998).

¶ 10 Although the legal reasoning set forth by the Pennsylvania Supreme Court in the preceding paragraph appears to govern the case *sub judice*, further analysis reveals that the holdings of *Coccioletti, supra*, and its progeny are inapplicable to the factual scenario of the present case. Despite the lower court's curative instruction to the jury, the admission of the nine millimeter handgun that was in appellant's possession eighty days before the murder of Mr. Ruffin constituted an abuse of discretion.

¶ 11 The case of *Coccioletti, supra*, involved a homicide that was committed with a handgun. The victim was shot near the cabin that one of the defendants owned and where the defendants were staying at the time of the homicide. After the commission of the homicide but still on the same day, the Commonwealth seized nine firearms and a quantity of ammunition from the cabin. *Coccioletti*, 425 A.2d at 390. Two spent cartridges found near the scene of the homicide were determined to have been fired from a weapon owned by one of the defendants and found in possession of the other defendant shortly after the homicide. *Id.* Of the nine handguns seized, three were admitted. After the commission of the homicide, the defendants attempted to conceal two of the three handguns that were later admitted into evidence. *Id.*

¶ 12 Herein, a far more tenuous link exists between the admitted weapon and the crime than found in *Coccioletti, supra*. This is not a case where the gun simply cannot be identified positively as the murder weapon. Unlike *Coccioletti*, it was *impossible* for appellant's gun to have been the murder weapon since the gun was in police custody eighty days before the murder and remained in police custody on the actual day of the murder. Appellant's gun was in no way linked to the crime scene. Since the guns admitted in *Coccioletti, supra*, were seized *after* the commission of the homicide and proximate to the crime scene, admission of the guns was relevant to show that the defendants possessed the necessary means to kill the

victim at the time of the homicide. Herein, appellant's gun was possessed by the police at the time of the homicide. Therefore, it was not relevant to show that appellant possessed the means to commit the murder. Moreover, the gun was clearly prejudicial since it was the same caliber as the murder weapon.

¶ 13 In *Commonwealth v. Akers*, 392 Pa.Super. 170, 572 A.2d 746 (1990), the lower court admitted testimony that the appellant had shown an individual a gun similar to the murder weapon five months prior to the homicide of which the appellant was convicted. The appellant argued that her possession of this gun was too remote in time to be relevant. In affirming the lower court, we recognized the principle set forth by our Supreme Court that "a defendant's possession of a weapon that *could have* been used to commit the crime is relevant." *Akers*, 572 A.2d at 754 (emphasis added)(citing *Commonwealth v. Yount*, 455 Pa. 303, 316 n. 8, 314 A.2d 242, 249 n. 8 (1974)).

¶ 14 The key language in *Akers, supra*, that sets it apart from the present case is that the weapon "could have been used to commit the crime." As stated above, it was impossible for appellant's weapon to have been used to commit the crime. Clearly, the retention of appellant's handgun by the police renders the *Akers* case inapposite to the present scenario.

¶ 15 The case of *Williams, supra*, also involved a homicide that was committed with a handgun. In *Williams*, credible testimonial evidence was produced at trial that traced the movements of the defendant prior to and subsequent to the approximate death of the victim and placed defendant with the victim. The victim was a long distance truck driver who died from a .38 caliber gunshot wound. *Williams*, 640 A.2d at 1257. The testimony primarily described how the defendant hitched rides with various truckers. Several of these witnesses testified that the defendant showed them a .38 caliber gun and a .25 caliber gun. *Id.* at 1260. One individual testified that the defendant stole the .38 caliber handgun from him, and another individual testified that he purchased the .38 caliber handgun from the defendant. *Id.* Most important, the testimony demonstrated that the defendant was in possession of the .38 caliber handgun both before and after the approximate time of the victim's death. These two handguns were admitted into evidence. However, the .38 caliber handgun could not positively be identified as the murder weapon. *Id.*

¶ 16 After the defendant in *Williams, supra*, was arrested, he provided a detailed confession to the police. The defendant admitted that he shot the victim with a .38 caliber handgun that he took from a truck driver in Virginia and later sold to a man in Texas. *Williams*, 640 A.2d at 1259, 1261. The defendant attempted to recant his confession at trial and have the jury believe it was a lie. *Id.* at 1261.

¶ 17 Our Supreme Court found that the two handguns in *Williams, supra*, were properly admitted since they were relevant to prove that the defendant had been at the scene of the killing, that he had readily obtained and disposed of handguns and that appellant had the same caliber of handgun that killed the victim at the time of the homicide. *Williams*, 640 A.2d at 1260. Moreover, the evidence of the two guns corroborated testimony from numerous witnesses as well as the defendant's detailed confession that he attempted to recant at trial. *Id.* at 1260–61. The Court also noted that any error would have been harmless in light of the overwhelming evidence of appellant's guilt. *Id.* at 1261.

¶ 18 Like the other cases mentioned in our discussion, the .38 caliber handgun admitted in *Williams, supra*, was not ruled out as the murder weapon. In further contrast to the *Williams* case, the introduction of appellant's possession of the gun was not essential for the corroboration or rebuttal of any testimony. Herein, the only purpose that was served by the admission of the handgun was to prejudice

appellant. Therefore, the court committed error, despite its curative instruction to the jury.

¶ 19 Moreover, unlike our Supreme Court in *Williams, supra,* we are not faced with a record containing overwhelming evidence of appellant's guilt. We find that the error committed by the lower court was not harmless. At trial, there was competing eyewitness testimony. Yolanda Hale testified that she saw appellant and co-defendant Johnson shoot Mr. Ruffin. On the other hand, Aubrey Langley testified that he saw co-defendants Johnson and Brown shoot Mr. Ruffin. Mr. Wynn and Mr. Dennis saw appellant fire into a parking lot, and Mr. Stevenson did not see appellant in the vicinity of the homicide on the night in question. Furthermore, the victim's dying declaration only implicated Riyad Johnson.

¶ 20 For the foregoing reasons, we reverse the judgment of sentence and remand for a new trial.

¶ 21 Judgment of sentence reversed and remanded for new trial. Jurisdiction relinquished.