J-S07011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SAJAAD HALL, | |
| Appellant | No. 1729 EDA 2017 |

Appeal from the Judgment of Sentence Entered January 12, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001164-2015

BEFORE:  BENDER, P.J.E. , PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 21, 2018**

Appellant, Sajaad Hall, appeals from the judgment of sentence of life incarceration, plus an additional 20 to 40 years, imposed after he was convicted of first-degree murder and related offenses.  Appellant challenges the weight of the evidence to sustain his convictions, as well as the trial court's admission of certain evidence.  After careful review, we affirm.

The trial court summarized the facts of this case, as follows:

> On June 21, 2014[,] at around 11:30 p.m., [Appellant] was present at a block party with more than 300 people on the 700 block of Montgomery Avenue in Philadelphia.  At that time, [Appellant] fired eleven shots from a .45 caliber handgun at Virgil Ross because Ross had shot [Appellant] in the leg on a prior occasion.  One bullet struck Ross in the back while another bullet struck Jameer Haynesworth, a bystander, in the head, severing his brainstem.  [Appellant] then entered a vehicle and fled the area. Haynesworth was brought to Temple Hospital where he was pronounced dead within ten minutes of arrival….

Philadelphia police detectives then conducted an investigation of the shooting. As part of this investigation, eyewitnesses Dontay Williamson and Kyle [*sic*] Dais both identified [Appellant] as the shooter to police. [Appellant] was later arrested by members of the fugitive squad.

Trial Court Opinion (TCO), 8/16/17, at 1-2 (citations to the record omitted).

Appellant was charged in two separate cases, one case pertaining to victim Jameer Haynesworth, and one case pertaining to victim Virgil Ross, Jr. The two cases were consolidated for a jury trial, which commenced on January 9, 2017. At the close thereof, the jury convicted Appellant of first-degree murder and carrying a firearm without a license (victim Haynesworth), as well as attempted murder and aggravated assault (victim Ross, Jr.). On January 12, 2017, Appellant was sentenced to a mandatory term of life incarceration, without the possibility of parole, for his murder conviction, as well as a consecutive 20 to 40 years' incarceration for his attempted murder offense. Appellant also received a concurrent sentence of 3 to 6 years' incarceration for his firearm crime. His aggravated assault conviction merged for sentencing purposes.

Appellant filed a timely post-sentence motion, which was denied. He then filed a timely notice of appeal, but only in the case involving victim Haynesworth. On June 6, 2017, the trial court issued an order directing Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 21 days, or by June 27, 2017. However, Appellant did not file his Rule 1925(b) statement until July 11, 2017. Nevertheless, the trial court addressed the issues raised in Appellant's untimely concise statement.

Thus, we need not remand, and will examine the issues Appellant presents herein. *See Commonwealth v. Thompson*, 39 A.3d 335, 340 (Pa. Super. 2012) ("When counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues we need not remand and may address the merits of the issues presented.") (citing *Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009)).

Appellant raises the following two claims for our review:

I.   Was the verdict against the weight of the evidence where the only evidence presented against [Appellant] were recanted witness accounts?

II.  Was the verdict tainted by the improper introduction of evidence that [Appellant] had been seen before with a gun more than once?

Appellant's Brief at 5.

First, Appellant contends that the jury's verdict was contrary to the weight of the evidence.

A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

Here, Appellant argues that the jury's verdict was against the weight of the evidence because it was premised only on the unreliable, out-of-court statements of two witnesses, Khyle Dais and Dontay Williamson, who recanted those statements at trial. Appellant claims that the out-of-court statements of these witnesses were wholly unreliable, as they "had been held by police in coercive circumstances for extended periods of time." Appellant's Brief at 16. Appellant further contends that

> Dais testified unequivocally[] that he had not seen the shooting, and that the documents purporting to be his pre-trial statement were inaccurate. Dais explained that he had made the initial statement only after being held by police on an unrelated probation violation, and being detained by homicide detectives for 18 hours. Dais testified that the police threatened to send him to prison if he did not agree with information that they provided to him, which implicated [Appellant] as the shooter. Certainly then[,] this statement, which was totally rejected by the witness at trial, was highly suspect and should give this Court pause.
>
> The only other evidence presented was the even more suspect statement of Williamson, who was only 15 years old at the time he spoke to police, was also held by homicide detectives for an unrelated juvenile matter and forced to spend the night in an interview room before he allegedly provided his statement incriminating [Appellant]. Of course, by Detective [Thomas] Gaul's own admission, officers spoke with Williamson throughout the night while he was held, without a parent present and without recording the conversation, and discussed the case. Only after this long and coercive encounter, did Williamson purportedly adopt the statement implicating [Appellant]. Of course, Williamson also disavowed the initial account when he actually testified before the jury.

- 4 -

These two accounts should not form the basis of a conviction for which [Appellant] has been sentenced to spend the rest of his life [in] prison. Each witness claimed to have been coerced and threatened by the police to make statements, which they each recanted before the jury. The police even corroborated many of the coercive circumstances, such as the extended detention before the interviews and the pretextual reasons each man was held. On these facts, the witness statements should be rejected.

*Id.* at 17-18 (citations to the reproduced record omitted).

After reviewing the record, we note that Appellant correctly states that Dais and Williamson recanted their statements to police at trial, with both men claiming that they did not witness the shooting. N.T. Trial, 1/11/17, at 20-24, 95-97.[1] Additionally, Dais and Williamson both testified that their statements to police were involuntary, that the interviewing officers coerced them with threats or promises, and that they only gave their statements under duress after being detained for lengthy periods of time. *Id.* at 33, 56-57, 65-69, 135, 148-49, 163.

However, the Commonwealth presented evidence to contradict Dais's and Williamson's allegations that their statements were involuntary. For instance, Detective Gaul, who was present during the interviews of these two witnesses, testified that both men voluntarily answered the detectives' questions and provided their statements without threat or coercion. *See id.* at 204, 206. Each man also gave consent to have his statement video and audio taped. *Id.* at 59, 135. Additionally, both Dais and Williamson completed written statements, which they reviewed, made additions or corrections to,

---

[1] We note that Khyle Dais is sometimes referred to in the record as Khyle Fikes-Dais, or Khyle Fikes.

initialed each answer, and signed at the bottom of each page. *Id.* at 29-59, 132, 135-36.

Moreover, in Dais's written statement to police, he confirmed that no one "from the Homicide Unit or the Philadelphia Police Department threatened [him] or promised [him] anything in order for [him] to give [his] interview[.]" *Id.* at 56, 206. While Dais was detained for 18 hours prior to giving his statement, he explained that he was held by police for his own, unrelated criminal matters. *See id.* at 33. Moreover, at the start of Dais's interview, the detectives acknowledged that Dais had been "at the Homicide Unit for approximately 18 hours[,]" and asked Dais if he "[c]ould … tell [the officer] how [he felt] physically and mentally[,]" to which Dais replied, "I'm cool. I did sleep off and on. I'm aware of what's going on." *Id.* The officer also asked if Dais had "been given the opportunity to eat, drink, and use the bathroom" while being held, and Dais confirmed that he had been provided these things. *Id.* We also point out that during his interview, Dais indicated that he was fearful of providing police with the statement, saying, "I just really don't need this interview getting out. I have a three-year-old daughter that lives with me." *Id.* at 35.

Additionally, contrary to Appellant's claim on appeal, Williamson's father was with Williamson during his first interview, *id.* at 116, and Williamson's mother accompanied him to his second interview, which was videotaped in her presence, *id.* at 135. Both parents were asked to review Williamson's statements with him before he signed the statement at the end. *Id.* at 132,

160. Moreover, during Williamson's interview, the detectives asked him if "anyone from the Philadelphia Police Department or Homicide Unit threatened [him] or promised [him] anything in order for [him] to give [his] interview," to which Williamson answered, "No." *Id.* at 130-31. Williamson also indicated that he was afraid that he "could get killed and his family could get hurt" if people in the community discovered that he had talked to the police. *Id.* at 157.

In light of this record, we ascertain no abuse of discretion in the trial court's rejection of Appellant's weight-of-the-evidence claim. The jury heard Dais's and Williamson's recantations, and considered their testimony that their police statements were coerced. However, the jury was also presented with evidence that Dais and Williamson voluntarily spoke with police, and recanted those statements at trial out of fear. The jury chose to believe the latter evidence, and the trial court discerned nothing shocking about that fact. We disagree with Appellant that the court abused its discretion in making this decision. Therefore, his first issue is meritless.

Appellant next challenges the trial court's admission of evidence that he had possessed a gun on a prior occasion before the at-issue shooting. Before addressing Appellant's specific argument, we note that,

> [t]he standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. *Commonwealth v. Hunzer,* 868 A.2d 498 (Pa. Super. 2005). Abuse of discretion is not merely an error of

judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Id.*

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010).

In this case, Appellant claims that a portion of Dontay Williamson's out-of-court statement to police should not have been admitted into evidence, as it revealed to the jury that Appellant had previously possessed a firearm. In particular, Appellant takes issue with the portion of Williamson's statement wherein Williamson told police that he had seen Appellant previously in possession of a "silver and black handgun." Appellant's Brief at 25 (internal quotation marks omitted). In concluding that this evidence was admissible, the trial court applied the 'similar weapon exception,' which our Supreme Court has elucidated as follows:

> A weapon not "specifically linked" to the crime is generally inadmissible; however, the fact "the accused had a weapon or implement suitable to the commission of the crime charged ... is always a proper ingredient of the case for the prosecution." [*Commonwealth v.*] *Robinson*, [721 A.2d 344,] 351 [(Pa. 1998)] (alteration in original) (citation and internal quotation marks omitted). "Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence." *Commonwealth v. Williams*, 537 Pa. 1, 640 A.2d 1251, 1260 (1994) (citing *Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A.2d 387, 390 (1981)). "The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." [*Commonwealth v.*] *Lee*, [662 A.2d 645,] 652 [(Pa. 1995)] (citing *Commonwealth v. Thomas*, 522 Pa. 256, 561 A.2d 699, 707 (1989) ("If a proper foundation is laid, the weapon is admissible where the circumstances raise an inference of the likelihood that it was used.")).

***Commonwealth v. Christine***, 125 A.3d 394, 400 (Pa. 2015).

In the present case, Appellant argues that the 'silver and black handgun' that Williamson said Appellant possessed previously was "simply not the same" as the "black Glock" that witnesses claimed was used in the present shooting. Appellant's Brief at 25. Accordingly, Appellant contends that the trial court erred by admitting this evidence.

Initially, we conclude that Appellant waived his objection to Williamson's statement that Appellant previously possessed a 'silver and black handgun.' During trial, and outside the presence of the jury, the parties and the court discussed certain objections to portions of Williamson's statement to police. One objection that Appellant raised was to the question, "Mr. Williamson, have you ever seen Sajaad Hall with a gun?" and to Williamson's answer, "Like once or twice." N.T. Trial, 1/11/17, at 109. Defense counsel stated that he objected to that question and answer being read to the jury, "unless it's pertaining to this incident. It's other crimes evidence." ***Id.*** In response, the trial court reasoned that the gun referred to by Williamson could have been the weapon used to commit the instant crimes. ***Id.*** at 109-10. Thus, the court permitted the at-issue question and answer to be read by the Commonwealth during Williamson's direct-examination.

However, during Williamson's direct-examination, the Commonwealth also read the following question and answer from Williamson's statement to police:

[The Commonwealth:] "QUESTION: Mr. Williamson, could you describe the gun [that you saw Appellant previously possess]?"

"ANSWER: It was silver and black, and it was the type of gun you put a clip in."

*Id.* at 130. Notably, Appellant did not object to this question and answer during the sidebar discussion of Williamson's statement to police, nor at the time the Commonwealth read this question and answer in front of the jury. Thus, Appellant cannot now claim that the court erred by allowing this portion of Williamson's statement to police to be admitted into evidence. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In any event, we would disagree with Appellant that the admission of this evidence was improper on the basis that the 'silver and black handgun' referred to by Williamson could not have been the 'black Glock' used in the shooting. In concluding that the 'similar weapon exception' applied to Williamson's statement, the trial court reasoned as follows:

> Here, the Commonwealth witness Dontay Williamson informed police that he had previously seen [Appellant] on one or two occasions in possession of a black and silver handgun of the type that has an ammunition clip. N.T. [Trial,] 1/11/17[,] at 129-30. On the day of the shootings here at issue, Williamson saw [Appellant] firing a gun that Williamson described as a black Glock with an extended clip. [*Id.*] at 147. Witness Kyle [*sic*] Dais described the gun fired by [Appellant] as a semi-automatic, which is the type of handgun that uses an ammunition clip. [*Id.*] at 41; N.T. [Trial,] 1/10/17[,] at 141-42.
>
> Accordingly, the gun observed by Williamson in [Appellant's] possession prior to the shootings was completely consistent with the gun observed by Williamson and Dais that [Appellant] used on the day of the shootings. [Appellant's] possession of a similar gun on prior occasions showed that he had

- 10 -

access to a weapon that could have been used to commit the crimes here at issue.

TCO at 9-10.

Additionally, the Commonwealth argues that the fact "that Williamson said the gun he saw firing at 11:30 p.m. [on the day of the at-issue shooting] was black, rather than silver and black, does not disprove that it could have been the murder weapon." Commonwealth's Brief at 12. The Commonwealth stresses that,

> [t]he color of a gun is not immutable. The silver color may have been obscured by darkness; [Appellant's] hand placement[;] … something else may have impaired Williamson's ability to see the silver color; or [Appellant] may have covered the gun with paint or something else. The mere fact that Williamson did not mention seeing silver on the gun that night does not prove that [the prior gun he saw Appellant possess] could not have been the murder weapon. Any uncertainty was for the jury to resolve.

*Id.* at 11-12.

We would agree with the trial court and the Commonwealth that the gun described by Williamson as being previously possessed by Appellant could likely have been the same gun used in the commission of the present offenses. Thus, even had Appellant preserved his challenge to the admission of Williamson's at-issue statement, we would reject it as meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/21/18</u>