J-S80023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DMITRY KUPERSCHMIDT | : | |
| | : | |
| Appellant | : | No. 3295 EDA 2016 |

Appeal from the Judgment of Sentence October 7, 2016
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000423-2014

BEFORE:  BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 07, 2018**

Dmitry Kuperschmidt ("Appellant") appeals from the judgment of sentence imposed by the Court of Common Pleas of Pike County after a jury found him guilty of multiple offenses related to an attempted election fraud. We reverse the conviction on criminal use of communication facility, vacate the judgment of sentence, and remand for resentencing.[1]

This case arises out of Appellant's fraudulent voting scheme in the 2014 Wild Acres Community Association election.  Appellant and his co-

---

[1]  Appellant filed an untimely Request for Permission to File a Post-submission Communication in the Form of a Reply Brief on December 19, 2017.  Said request is hereby denied.

defendant, Myron Cowher, II,[2] planned to cast ballots for historically non-voting property owners of the Wild Acres Community in order to influence the election results. Appellant went to trial in May of 2016 on 217 counts, including forgery, identity theft, criminal use of communication facility, tampering with records or identification, criminal attempt, and criminal conspiracy.[3] The jury convicted Appellant on 190 counts.

On August 11, 2016, the trial court sentenced Appellant to incarceration for an aggregate term of twelve to twenty-nine months. Appellant filed a post-sentence motion for reconsideration. Following a hearing, the trial court entered an amended sentencing order, which reflected its intent not to impose a sentence on multiple counts. Order, 10/7/16.[4] This appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

_____

[2] Myron Cowher, II appealed his judgment of sentence at 3297 EDA 2016. We addressed his claims of error in a separate memorandum.

[3] 18 Pa.C.S. §§ 4101(a)(2), 4120(a), 7512(a), 4104(a), 901, and 903, respectively.

[4] The jury convicted Appellant on multiple counts of criminal attempt and criminal conspiracy related to the substantive offenses of forgery, identity theft, and tampering with records or identification. However, "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S. § 906. Thus, the trial court "decline[d] to enter a Sentence on [the conspiracy convictions] in accordance with 18 Pa.C.S.A. §906." Order, 10/7/16, at 2–3 (emphasis omitted).

On appeal, Appellant states the following issues for our consideration:

1. Did the lower court err when it denied [Appellant's] motion to suppress the recorded phone call of May 8, 2014 because the wiretap application did not recite reasonable grounds for the interception of that call since the averments therein only showed that [Appellant] may have had knowledge that a future crime would be committed?

2. Did the lower court err by violating [Appellant's] right to confrontation and procedural due process when it consolidated [Appellant's] trial with Cowher's and denied [Appellant's] request for a severance which allowed the Commonwealth to introduce Cowher's hearsay against [Appellant]?

3. Did the lower court err when it refused to grant a mistrial after the prosecutor twice commented on [Appellant's] right to remain silent?

4. Was the evidence insufficient to support [Appellant's] convictions for attempt?

5. Was the evidence insufficient to commit criminal use of a communication facility through the use of the mail; where there was no evidence that [Appellant] attempted to take a substantial step toward using the mail?

Appellant's Brief at 4–5.[5]

Appellant first challenges the denial of his motion to suppress the consensual wiretap of a May 8, 2014 telephone call between Appellant and Robert Depaolis ("Depaolis"), the Wild Acres Community Director of Operations. Pennsylvania State Police Trooper Frank Orlando recorded the

---

[5] Although Appellant presented eight issues for the trial court's review, he only presents five issues on appeal to this Court. Thus, we consider the other three issues waived. **Commonwealth v. Yocolano**, 169 A.3d 47, 53 n.7 (Pa. Super. 2017).

telephone call pursuant to the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"), 18 Pa.C.S. §§ 5701–5782.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony.

*Commonwealth v. McCoy*, 154 A.3d 813, 815–816 (Pa. Super. 2017) (quoting *Commonwealth v. Roberts*, 133 A.3d 759, 771 (Pa. Super. 2016), *appeal denied*, 636 Pa. 675, 145 A.3d 725 (2016)) (internal citations omitted). "Furthermore, our Supreme Court in *In the Interest of L.J.*, 79 A.3d 1073, 1085 (Pa. 2013), clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing." *McCoy*, 154 A.3d at 816.

Appellant complains that Trooper Orlando's memorandum in support of the wiretap application did not establish reasonable grounds for the wiretap; rather, it established that the trooper "could only, at best, show that

- 4 -

[Appellant] may have had knowledge of Cowher's plan." Appellant's Brief at 10.[6] In response, the Commonwealth argues that reasonable grounds for the wiretap consist of the following facts: Cowher told DePaolis that Appellant was aware of the plan; Appellant was the Wild Acres Community Chairman of the Board at the time; and Appellant had already confronted DePaolis about the plan by asking if DePaolis had taken care of "something" yet. Commonwealth's Brief at 18–19.

We have discussed Pennsylvania's Wiretap Act as follows:

> Pennsylvania's Wiretapping and Surveillance Control Act, is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances these otherwise illegal practices and their derivative fruits may be used.

> However, the Wiretap Act contains an exception allowing law enforcement to utilize wiretaps without obtaining prior judicial approval when one of the parties to the conversation consents to the interception:

> **§ 5704. Exceptions to prohibition of interception and disclosure of communications**

---

[6] We consider this argument to be fairly subsumed in the third issue, first subpart of Appellant's statement of errors complained of on appeal: "The District Attorney's application for authorization to conduct the wiretap was not supported by reasonable suspicion and/or probable cause[.]" Pa.R.A.P. 1925(b) Statement, 11/23/16, at ¶ 3a.

It shall not be unlawful and no prior court approval shall be required under this chapter for:

\* \* \*

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:

\* \* \*

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception ...

18 Pa.C.S.A. § 5704 (emphasis added).

In determining whether the approval of a consensual wiretap was proper, this Court has determined that police officers must articulate "reasonable grounds" for the monitoring and the Attorney General or the district attorney must verify that that [sic] these reasonable grounds exist.

***Commonwealth v. McMillan***, 13 A.3d 521, 525 (Pa. Super. 2011) (internal citations omitted).

The trial court disposed of Appellant's suppression motion as follows:

On March 2, 2015, [Appellant] filed a second Omnibus Pre-Trial Motion seeking to suppress a recorded telephone conversation

involving [Appellant] on May 8, 2014. A hearing on [Appellant's] Motions was held on April 14, 2015. . .

The relevant facts for determination of [Appellant's] Omnibus Pre-Trial Motion are as follows[:] In late March 2014, Robert Depaolis, the director of operations of the Wild Acres Community Association, received a telephone call from Myron M. Cowher, II who was the secretary of the Association's board of directors. Cowher advised DePaolis that he and [Appellant], the chairman of the board of directors, wanted to speak to him about a matter. Several weeks thereafter, Cowher came to the Association's office and requested Depaolis to provide him with a list of members in good standing who own lots in the community's "SOS" area. The "SOS" area consists of lots that are not buildable.

DePaolis stated that Cowher intended to use the ballots of the SOS members to vote in the upcoming board of directors election scheduled in June 2014. Shortly after receiving this information, DePaolis contacted the Pennsylvania State Police ("PSP") and the Pike County District Attorney's office. DePaolis was concerned that Cowher's stated intentions may constitute a crime. After consultation with the PSP, DePaolis arranged a meeting with Cowher for May 8, 2014 at the Association's office.

On the day before the scheduled meeting, to wit, May 7, 2014, Trooper Frank Orlando of the PSP requested approval from the District Attorney to intercept a telephone call between DePaolis and [Appellant]. The District Attorney approved Trooper Orlando's request in accordance with 18 Pa. C.S.A. 5704. During this telephone call which occurred on May 8, 2014 at 9:29 a.m., [Appellant] told DePaolis that he and Cowher have already agreed and that DePaolis has nothing to worry about. DePaolis advised [Appellant] that Cowher was coming to the office to fill out ballots. [Appellant] told DePaolis that he should relax, that no one knowns anything and that "nobody's got any proof of what happened, when it happened." See Commonwealth's Exhibit No. 2. Further, [Appellant] instructed DePaolis to shut off the video cameras at the office prior to Cowher arriving.

On May 8, 2014 at 11:18 a.m., Cowher arrived at the Association's office to meet with DePaolis. This meeting was recorded electronically and orally in accord with Section 5704.

During this meeting, DePaolis provided numerous election ballots to Cowher for the upcoming June 2014 board of directors' election. The ballots, which totaled seventy-one (71), were those intended for the SOS members. Cowher completed nine (9) of the ballots during his meeting with DePaolis. Cowher did so by placing an "X" over the name of the selected candidate or circling the candidate's name. At the conclusion of the meeting, Cowher took the nine (9) completed ballots and the remaining sixty-two (62) uncompleted ballots with him. As Cowher left the office, the PSP arrested him.

* * *

[Appellant] challenges the admissibility of the recorded conversation on the basis that the state police failed to articulate reasonable grounds for suspected criminal activity by [Appellant] as required by appellate case law interpreting §5704.

* * *

The [c]ourt finds that Trooper Orlando's affidavit seeking approval of the district attorney for the interception sets forth reasonable grounds for the request. See Commonwealth's Exhibit No. 4. The affidavit sets forth details as to Cowher's alleged activities in attempting to fix the upcoming Wild Acres board election. It further alleges that [Appellant] knew what Cowher "wanted to do for the upcoming election." *Id.* The affidavit further alleged that [Appellant] asked DePaolis if he had taken care of "something" yet. *Id.* When read in its entirety, Trooper Orlando's affidavit sets forth reasonable grounds to suspect that [Appellant] knew of and was a participant in the attempt to fix the upcoming board election. Accordingly, [Appellant's] request to suppress the recorded telephone conversation is DENIED.

Trial Court Order, 7/15/15, at unnumbered 1–3, 5, 6. **See also** Trial Court Opinion, 1/3/17, at unnumbered 9 ("This [c]ourt determined that the affidavit, when read in its entirety, provided reasonable grounds for the wiretap.").

- 8 -

Upon our review of the statutory language, relevant case law, and the record in this case, we agree with the trial court that Trooper Orlando provided reasonable grounds for believing that Appellant would discuss the fraudulent election scheme with DePaolis during an intercepted telephone call. Prior to monitoring the May 8, 2014 telephone conversation between DePaolis and Appellant, DePaolis provided Trooper Orlando with information about DePaolis' conversations with Cowher and Appellant regarding the fraudulent election scheme. N.T., 10/13/15, at 26–31, 60–62; Commonwealth Exhibits 1 and 4. Moreover, an assistant district attorney verified that reasonable grounds for the monitoring existed. *Id.* at 27, 28, 36; Commonwealth Exhibits 3 and 6. Because the trial court's findings are supported by the record and its legal conclusions are sound, we discern no abuse of its discretion in admitting the consensual telephone interception of Depaolis' conversation with Appellant.

Next, Appellant complains that the trial court erred in denying his motion to sever the joint trial of Appellant and Cowher. In challenging the denial of his motion for severance, Appellant presents a two-part argument: the joint trial violated his right to confrontation, and the joint trial violated his right to procedural due process. In Appellant's words: "The Commonwealth introduced a statement made by Cowher about what [Appellant] allegedly said to him, which implicated [Appellant] by showing that he knew about Cowher's scheme. [Appellant] had no way to rebut this

hearsay—Cowher did not testify and was therefore not subjected to confrontation." Appellant's Brief at 13–14 (footnote omitted).

In support of his confrontation argument, Appellant relies on *Bruton v. United States*, 391 U.S. 123 (1968). Therein, the United States Supreme Court held that admission at a joint trial of a co-defendant's confession, which implicates the defendant, violates the defendant's Sixth Amendment right to confront witnesses against him. *Id.* at 125. In response, the Commonwealth counters that Cowher's statement does not present a confrontation issue. Commonwealth's Brief at 20. In support of its position, the Commonwealth relies on *Crawford v. Washington*, 541 U.S. 36 (2004). Therein, the United States Supreme Court held that the Sixth Amendment bars the admission at trial of an out-of-court statement, which is testimonial in nature, unless the declarant is unavailable and the defendant had a prior opportunity to cross examine the declarant. The Commonwealth argues that Cowher's statement was non-testimonial in nature and, therefore, not subject to the *Bruton* rule. Commonwealth's Brief at 21.

In support of his due process argument, Appellant argues that he "was not afforded an opportunity to defend himself against Cowher's hearsay statement to Depaolis that relayed what [Appellant] allegedly told Cowher." Appellant's Brief at 16 (citing *Commonwealth v. Ceja*, 427 A.2d 631, 642 (Pa. 1981) ("Due process principles no doubt require that a party be

afforded a reasonable opportunity to challenge the reliability of adverse hearsay evidence."")).[7] In response, the Commonwealth asserts that the trial court properly admitted Cowher's statements implicating Appellant under the hearsay exception of Pa.R.E. 803(25)(E).[8]

> The following principles guide our review of this issue:

> Where ... the crimes charged against each defendant arise out of the same facts and virtually all of the same evidence is applicable to both defendants, this Court, as well as the United States Supreme Court, have indicated a preference to encourage

---

[7] We distinguish *Ceja*, wherein the Pennsylvania Supreme Court "granted allocator to consider the appropriateness of the [*Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366 (Pa. Cmwlth. 1976)] guidelines for evaluating hearsay evidence in administrative hearings." *Ceja*, 427 A.2d 631, 633 (Pa. 1981). This appeal does not stem from an administrative hearing.

[8] That rule provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

> * * *

> **(25) An Opposing Party's Statement.** The statement is offered against an opposing party and:

> * * *

> (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

> The statement may be considered but does not by itself establish . . . the existence of the conspiracy or participation in it under (E).

Pa.R.E. 803(25)(E).

joint trials to conserve resources, promote judicial economy, and enhance fairness to the defendants:

> It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.

> Given this preference, the burden is on defendants to show a real potential for prejudice rather than mere speculation. Separate trials of co-defendants should be granted only where the defenses of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice. Although antagonistic defenses are a factor for a trial court to consider in determining whether to grant a motion to sever, the fact that defendants have conflicting versions of what took place, or the extent to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together.

*Commonwealth v. Rainey*, 928 A.2d 215, 231–232 (Pa. 2007) (internal quotation marks and citations omitted). We have further explained:

> Joinder and severance of separate indictments for trial is a discretionary function of the trial court; consequently, the trial court's decision is subject to review for abuse of that discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. Consequently, an abuse of discretion consists not merely of errors in judgment by the trial court, but instead contemplates action unsupported by the evidence, at odds with governing law, or arising from improper motives personal to the judge.

- 12 -

***Commonwealth v. Brookins***, 10 A.3d 1251, 1255 (Pa. Super. 2010) (internal quotations marks and citations omitted).

Moreover, our rules of criminal procedure provide: "Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 582(A)(2). Conversely, the rules permit severance of charges of defendants already joined when it appears that a defendant may be prejudiced by a joint trial. Pa.R.Crim.P. 583. Reading these rules together, our Supreme Court established the following test for severance matters:

> Where the defendant moves to sever offenses not based on the same act or transaction ... the court must therefore determine: (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

***Commonwealth v. Collins***, 703 A.2d 418, 422 (Pa. 1997). The prejudice must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime. ***Commonwealth v. Lauro***, 819 A.2d 100, 107 (Pa. Super. 2003).

Additionally, we note that Appellant and Cowher were charged with conspiracy. In Pennsylvania, "joint trials are preferred where conspiracy is charged." ***Commonwealth v. Housman***, 986 A.2d 822, 834 (Pa. 2009).

- 13 -

In fact, the statute defining conspiracy specifically addresses the issue of joinder:

> **(d) Joinder and venue in conspiracy prosecutions.**—
>
> (1) Subject to the provisions of paragraph (2) of this subsection, two or more persons charged with criminal conspiracy may be prosecuted jointly if:
>
> > (i) they are charged with conspiring with one another; . . .

18 Pa.C.S. § 903(d)(1)(i).

Here, the trial court concluded that joinder was appropriate, addressing Appellant's confrontation and due process arguments together. Specifically, the trial court acknowledged the constraints of **Bruton**, but it "found that the audio recordings and statements made by Cowher fell under [Pa.R.E. 803(25)(E)] and therefore *Burton* [sic] was not applicable to the use of these statements at the joint trial." Trial Court Opinion, 1/3/17, at unnumbered 4. The trial court explained its position as follows:

> In requesting severance, [Appellant] asserts that he would be denied his federal constitutional right of confrontation (Sixth Amendment) under the ruling of *Bruton v. United States*, 391 U.S. 123(1968) and its progeny. . . .
>
> The Pennsylvania Supreme Court has determined, however, that *Bruton* is not applicable where the admission of the disputed co-defendant testimony is authorized by a recognized exception to the hearsay rule. *Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A. 2d 387 (1981); *Commonwealth v. Gribble*, 580 Pa. 647, 863 A. 2d 455 (2004). In addition, our Supreme Court noted that "the out-of-court declarations of one co-conspirator can be admitted against another co-conspirator provided that the declarations were made during the conspiracy and in furtherance of the common design." *Coccioletti*, 493 Pa.

- 14 -

at 113; 425 A. 2d at 392 referring to *Commonwealth v. Evans*, 489 Pa. 85, 413 A. 2d 1025(1980).

The *Gribble* Court subsequently recognized that Pa. R. E. 803(25)(E) serves as a recognized exception to the hearsay rule. Rule 803(25)(E) allows a hearsay statement to be admitted where it is made by a defendant's co-conspirator "during and in furtherance of the conspiracy." The *Gribble* Court further noted that "the U.S. Supreme Court and this Court had recognized that statements admitted under the co-conspirator exception to the hearsay rule do not violate the Sixth Amendment." *Gribble*, 580 Pa. at 664, 863 A.2d at 465; see also *United States v. Bourjaily*, 483 U.S. 171, 183–184, 107 S. Ct. 2775, 2783, 97 L. Ed. 144 (1987). Accordingly, the Sixth Amendment protections originally explained in *Bruton* were not applicable in *Gribble* as a result of the available co-conspirator hearsay exception provided in Pa. R. E. 803(25).

We similarly conclude herein that the out-of-court statements of the co-defendant Cowher are admissible in a joint trial of the two (2) defendants pursuant to Pa. R. E. 803(25)(E). The out-of-court statements in question were made prior to completion of the alleged conspiratorial act, i.e., election fraud. The statements were also made in furtherance of the alleged common design of the conspiracy, i.e., to commit election fraud in the Wild Acres community general election in May 2014. In accordance with our Supreme Court's interpretation of *Bruton* and its progeny as set forth above and the applicability of Pa. R. E. 803(25)(E) herein, as well as in exercising this [c]ourt's discretion to effectuate judicial economy, a joint trial of [Appellant] and his co-defendant is proper. Accordingly, [Appellant's] Motion for Severance is hereby DENIED.

Trial Court Opinion and Order, 3/7/16, at unnumbered 4–6.

Upon review, we agree with the trial court. Appellant has failed to establish that severance was necessary because of constitutional infractions. First, the evidence regarding charges against Appellant and Cowher related to their roles in the fraudulent election scheme; as such, evidence of the offenses would be admissible in separate trials for each other. ***Collins***, 703

A.2d at 422. Indeed, the Commonwealth proved the existence of a conspiracy. *See Commonwealth v. Pinkins*, 525 A.2d 1189, 1191 (Pa. 1987) ("[A]conspiracy, for purposes of the co-conspirator exception, may be inferentially established by showing the relation, conduct or circumstances of the parties."). Thus, because Cowher's statements about Appellant occurred during and in furtherance of the conspiracy, they were admissible under Pa.R.E. 803(25)(E). Second, evidence presented at trial explained the role each co-defendant played in the scheme; thus, separation of the evidence by the jury was possible, and the likelihood of jury confusion was minimal. *Collins*, 703 A.2d at 422.

As to the third element for severance, Appellant has failed to establish that he suffered such prejudice as to require a separate trial. *Collins*, 703 A.2d at 422. The evidence presented at trial established that Appellant and Cowher conspired with one another to commit election fraud. 18 Pa.C.S. § 903(d)(1)(i). Furthermore, the fact that Appellant and Cowher had conflicting versions of the extent to which they each participated in the fraudulent election scheme is not a sufficient basis on which to sever. *Rainey*, 928 A.2d at 231–232. Thus, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to sever.

In his third issue, Appellant challenges the trial court's refusal to grant a mistrial when, in his closing argument, the prosecutor twice referred to Appellant's decision not to testify. Appellant's Brief at 16–17. Appellant

contends that the prosecutor's comments violated his federal and state constitutional right against self-incrimination. Appellant's at 17. According to Appellant, "the prosecutor's comment here [was] a bell that was not un-rung by the court's cautionary instruction. To make matters worse, . . . [the prosecutor's] . . . disingenuous feigning of obedience to the [trial court's] instruction only once again placed in the mind of the jurors that [Appellant] chose not to testify." *Id.* at 19.

Relying on the analogous case of **Commonwealth v. Hess**, 548 A.2d 582 (Pa. Super. 1988), the Commonwealth argues that the prosecutor's first comment during his closing argument was fair response to defense counsel's opening statement that Appellant would testify and what he would say, when, in fact, Appellant did not testify. Commonwealth's Brief at 26–27 (citing N.T., 5/18/16, at 87–88; N.T., 5/23/16, at 77). Additionally, the Commonwealth points out that the prosecutor's comment was "precisely in accord with the [trial c]ourt's instructions, that he was 'allowed to comment as Prosecutor on what was told to the jury in the opening statement did not happen in trial.' See N.T. 5/23/16 at 13–14." *Id.* at 28. Regarding the prosecutor's second reference to Appellant not testifying, the Commonwealth characterizes it as a "reaffirmation to the jury of the validity of the [trial c]ourt's cautionary instructions." *Id.* at 29.

Our standard of review for the denial of a motion for a mistrial is limited to assessing whether the trial court abused its discretion.

*Commonwealth v. Scott*, 146 A.3d 775, 778 (Pa. Super. 2016), *appeal denied*, 166 A.3d 1232 (Pa. 2017).

> More specifically, this Court has provided the following standards for reviewing a claim of prosecutorial misconduct in a closing statement:
>
>> it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

*Scott*, 146 A.3d at 778–779 (internal quotation marks and citations omitted).

> Here, the trial court explained its refusal to grant a mistrial as follows:
>
>> During his closing argument [the] Assistant District Attorney . . . reminded the Jury that it is their duty to make decisions based on the evidence presented at trial and that the statements made by attorneys are not evidence. N.T. 5/23/16 at [76–77]. [The prosecutor] referred to Appellant's Attorney['s]

- 18 -

. . . opening statement in which [defense counsel] stated that his client would testify. *Id.* at 77. The relevant part of [the prosecutor's] statement is as follows:

> I want to emphasize to you that when it comes to those wires that is evidence. It is absolutely evidence; those two recordings. I will tell you what is not evidence though. The Judge will give you instruction that what lawyers say is not evidence. This is important. You sit as far away from that witness stand as I do. Do you recall [defense counsel] talking about how my client is going to testify? How he is going to testify? How he said that in his opening statement? Do you remember that? Gave some long story about Moldova or something along those lines; did you seem him testify to that? I didn't. *Id.* at 76–[7]7.

Following this statement [defense counsel] objected and at sidebar moved for a mistrial. *Id.* at 77. This [c]ourt denied the motion, but informed [the prosecutor] that he would "have to move on." *Id.* The [c]ourt also addressed the jury with a cautionary instruction regarding [Appellant's] right to remain silent. The jury was instructed that it was "not to draw any adverse inference whatsoever" from [Appellant's] choice not to testify. *Id.* at 79. After the cautionary instruction was given, [the prosecutor] continued as follows:

> Yes Your Honor. That is absolutely the case; you do not consider the fact that [Appellant] didn't testify against him. This is absolutely the case. No doubt about it. What the Judge said is right. *Id.*

At this point, [defense counsel] once again objected and moved for a mistrial at side bar. *Id.* at 79–80. This [c]ourt again denied the motion and told [the prosecutor] to "move on." *Id.* at 80.

This [c]ourt respectfully submits that it properly addressed both references made by the prosecutor to [Appellant's] failure to testify. The first reference appeared to be an attempt by [the prosecutor] to rebut defense counsel's remarks in his opening statement that [Appellant] would testify in the case. Obviously, [Appellant] did not testify. Although the prosecutor's attempt to rebut defense counsel's opening statement remarks in his closing argument was fraught with the potential of prejudicial

implications, the [c]ourt did not discern the attempt as a direct attack on [Appellant's] constitutional right to not testify. Accordingly, instead of granting a mistrial, the [c]ourt gave an immediate and appropriate cautionary instruction advising the jury that it was [Appellant's] absolute right to remain silent and the jury should not draw any adverse inference whatsoever from [Appellant's] decision not to testify.

After the initial cautionary instruction, the prosecutor attempted to confirm to the jury the appropriateness of the [c]ourt's cautionary instruction as to [Appellant's] right to remain silent and his agreement therewith. While these additional statements may have been unnecessary, given the [c]ourt's cautionary instruction, they did not warrant the declaration of a mistrial. If anything, these comments reaffirmed to the jury the validity of the [c]ourt's cautionary instruction. As indicated, the [c]ourt then appropriately instructed [the prosecutor] to "move on" with his closing argument.

Trial Court Opinion, 1/3/17, at unnumbered 14–16.

Our review of the record reveals that the prosecutor did not violate Appellant's right to remain silent. The prosecutor's first comment was a fair response to defense counsel's opening statement as to Appellant testifying and what he would say. Thus, it was proper for the trial court to give the prosecutor latitude in advancing an argument that was supported by the record. Consequently, we conclude the prosecutor's first comment did not amount to misconduct. Moreover, the trial court promptly gave a cautionary instruction to the jury. N.T., 5/23/16, at 79.

As for the prosecutor's second reference, we agree with the trial court's assessment that, although ill-advised, the comment did not necessitate a mistrial; it merely reinforced the trial court's cautionary

- 20 -

instruction. Furthermore, after closing arguments, the trial court gave the jury a thorough instruction, emphasizing that the Commonwealth had the burden to prove Appellant's guilt beyond a reasonable doubt and that Appellant was not required to produce any evidence. *Id.* at 129, 134–135, 137–139. Juries are presumed to follow the trial court's instructions. *Scott*, 146 A.3d at 780 (citation omitted). We agree with the trial court's conclusion that the prosecutor's comments did not warrant a mistrial.

Appellant's fourth issue is a challenge to the sufficiency of the evidence supporting his convictions of criminal attempt to commit forgery, identity theft, and tampering with records or identification. Appellant's Brief at 20–23. According to Appellant, the Commonwealth's evidence:

> directly rebuts any notion that [Appellant] was involved in Cowher's alleged scheme. He did not know specifics; issued no instructions on how to complete the crimes; and in fact did not even know what was going on. . . .
>
> Even taking the most favorable inference in favor of the Commonwealth, the one comment [Appellant] made about "turning the cameras off" could only possibly lead to an inference of his limited knowledge that Cowher and De[P]aolis were planning something.

*Id.* at 24–25.

> In reviewing the sufficiency of the evidence, we consider:
>
> [w]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every

- 21 -

possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fortson*, 165 A.3d 10, 14–15 (Pa. Super. 2017) (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011)) (original internal brackets omitted). "A person commits an attempt when, with the intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of that crime." 18 Pa.C.S. § 901(a).

Furthermore, "[a] person is guilty of an offense if it is committed by . . . the conduct of another person for which he is legally accountable. . . . A person is legally accountable for the conduct of another person when . . . he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S. § 306(a), (b)(3). "An individual is an accomplice if, with intent to promote or facilitate the commission of the offense, he solicits, aids, agrees, or attempts to aid another person in planning or committing the offense." *Commonwealth v. Treiber*, 121 A.3d 435, 459 (Pa. 2015) (citing 18 Pa.C.S. § 306(c)(1)).

Relying on accomplice liability, the trial court disposed of Appellant's sufficiency challenge to the attempt convictions with the following analysis:

> Here, [Appellant] was convicted on numerous Counts of Criminal Attempt to Commit Forgery (F-3) under 18 Pa.C.S. § 4101(2), numerous Counts of Criminal Attempt to Commit Identify Theft (F-3) under 18 Pa. C. S. § 4120(a), and numerous Counts of Criminal Attempt to Commit Tampering with Records or Identification (M-1) under 18 Pa.C.S. § 4104(a).[9] [Appellant's] convictions rested on his liability as an accomplice to his co-Defendant, Cowher.
>
> At trial, the Commonwealth presented the PSP recording in which [Appellant] was informed by DePaolis over the phone that Cowher was coming into the office "to take care [of] the ballots" and that DePaolis was "a little nervous about it." *See* Commonwealth Exhibit 1. [Appellant] responded by saying, "Don't be nervous about it." I didn't know nothing about it. Me and Myron already agreed." *Id.* [Appellant] went on to tell DePaolis to "relax" and assured him they were "still gonna win no matter what." *Id.* In addition, [Appellant] suggested that DePaolis turn off the cameras on the office while Cowher was filing out the ballots. *Id.*
>
> The PSP recording clearly shows that [Appellant] was fully aware and supportive of Cowher's intention to fill out all of the S.O.S. ballots and commit fraud. Specifically, [Appellant's] suggestion that DePaolis should turn off the cameras shows his intent to promote and aid or agree in Cowher's attempt to fraudulently file [sic] out the S.O.S. ballots. Given this evidence, a reasonable fact-finder could conclude that the verdicts on all the attempt charges were correct and that there was sufficient evidence to support the jury's conclusions of fact.

Trial Court Opinion, 1/3/17, at unnumbered 17–18. Notably, Appellant makes no mention of, let alone argument against, his liability as Cowher's

_____

[9] We note that Appellant incorrectly identifies this offense as a violation of 18 Pa.C.S. § 4911 (Tampering with public records or information). Appellant's Brief at 21.

accomplice. Appellant's Brief at 20–26. Additionally, viewing all of the evidence in the light most favorable to the Commonwealth, we discern no basis on which to disturb the trial court's findings, which are supported by the record, or its legal conclusion, which is supported by statutory and case law.

Finally, Appellant argues that the evidence was insufficient to support his conviction of criminal use of communication facility. According to Appellant:

> Here, there was no evidence that Cowher actually used the mail. Moreover, there is no evidence to support the inference that Cowher took a substantial step toward using the mail. . . . As Cowher did not attempt to use the mail, then it follows that [Appellant] could not be convicted of being an accomplice to same.

Appellant's Brief at 27.

"A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony . . ." 18 Pa.C.S. § 7512(a). The term "'communication facility' means a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail." *Id.* at 7512(c).

The trial court disposed of this challenge with the following analysis:

[Appellant's] conviction under [section 7512] of the code rests again on his accomplice liability for Cowher's actions. . . . [Appellant] was aware and supportive of Cowher's plan to fill out the S.O.S. ballots. In addition, as a then member of the Wild Acres Board of Directors, [Appellant] would have been fully aware of the election process as DePaolis described it at trial. DePaolis testified that each year ballots were printed up in the community's administrative office and mailed out to lot owners. N.T., 05/19/16 at 92–[9]4. He further testified that instead of mailing the S.O.S. ballots he brought them to Cowher during a meeting with Cowher in his office. *Id.* at 94. DePaolis brought the ballots to Cowher upon Cowher's instruction to do so. *Id.* Finally, DePaolis testified that following the meeting Cowher left the office with nine (9) filled out ballots and approximately twenty-one (21) other ballots that Cowher intended to fill out and mail. *Id.* at 111–[11]2.

Based on Cowher's intentions and [Appellant's] understanding of both Cowher's intentions and understanding of the election process in Wild Acres, a reasonable fact-finder could infer that [Appellant] knew Cowher was going to use the U.S. Postal Service in furtherance of his attempt to commit Forgery, Identity Theft, and Tampering with Records or Identification. This inference allowed the jury to reasonably determine that there was sufficient evidence to convict Appellant [of criminal use of communication facility].

Trial Court Opinion, 1/3/17, at unnumbered 18–19.

Viewing all of the evidence in the light most favorable to the Commonwealth, we disagree with the trial court's conclusion that there was sufficient evidence to convict Appellant of criminal use of communication facility. The basis for this charge was Appellant's use of:

the United States Postal Service . . ., to wit, in that he caused numerous election ballots not to be mailed to property owners within the Private Community of Wild Acres with the intention of completing and mailing back same in order to cast votes in favor of specific individuals in an upcoming Election of the Wild Acres Lakes property Owners Association.

Information, 10/27/14, at Count 19. We note that the statute requires "use" of a communication facility. 18 Pa.C.S. § 7512(a). The record reveals, however, that Cowher did not mail the ballots because DePaolis secured the ballots in his office, turned them over to Cowher on May 8, 2014, and then Cowher was arrested upon leaving the Wild Acres administration building. N.T., 5/19/16, at 94, 111–112; N.T., 5/20/16, at 53. Therefore, despite their intentions, neither Cowher nor Appellant as an accomplice used the United States Postal Service "to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony." 18 Pa.C.S. § 7512(a). Finding the evidence sufficient would be wholly inconsistent with the language and purpose of section 7512(a). Accordingly, we reverse the conviction for criminal use of communication facility.

Because we reverse the conviction for criminal use of communication facility, we have upset the trial court's sentencing scheme. Consequently, we must remand the case for resentencing. *Commonwealth v. Phillips*, 946 A.2d 103, 115 (Pa. Super. 2008).

Conviction for criminal use of communication facility reversed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/18